_____

KELVIN FORD and            )
TASHA FORD,                )
                           )
    Plaintiffs,          )
                           )
v.                         )
                           )
SPECIALIZED LOAN SERVICING,    )        No. 16-cv-2414-JPM-tmp
LLC; CHASE MORTGAGE            )
COMPANY; SHAPIRO & INGLE,      )
LLP; MARATHON MANAGEMENT,      )
LLC; MARVIN'S GARDEN, LLC and  )
AUCTION.COM, INC.,             )
                           )
    Defendants.          )

_____

### REPORT AND RECOMMNEDATION
_____

    Before the court are defendants' motions to dismiss *pro se* plaintiffs Kelvin and Tasha Ford's ("the Fords") Amended Complaint (ECF No. 18) pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. The motions were filed by defendant Auction.com, Inc. ("Auction") on August 8, 2016 (ECF No. 30), defendant JPMorgan Chase Bank, N.A. ("Chase") on August 10, 2016 (ECF No. 32), defendant Specialized Loan Servicing, LLC ("Specialized") on August 10, 2016 (ECF No. 33), defendant Shapiro & Ingle, LLP ("Shapiro") on August 10, 2016 (ECF No. 35), and defendants Marathon Management, LLC ("Marathon") and

Marvin's Garden, LLC ("Marvin's") on August 31, 2016 (ECF No. 47). The Fords filed their responses in opposition to the motions filed by Chase, Marathon and Marvin's, and Auction on October 12, 2016 (ECF Nos. 52, 53, 54), and to the motions filed by Specialized and Shapiro on October 13, 2016. (ECF Nos. 56, 57.) Marathon and Marvin's filed a reply on October 17, 2016. (ECF No. 60.) Auction, Specialized, and Chase filed their replies on October 26, 2016. (ECF Nos. 61, 62, 63.) Also before the court is the Fords' motion for leave to file a second amended complaint, filed on November 30, 2016. (ECF No. 72.) Defendants Chase, Specialized, Marathon, Marvin's and Auction have filed responses in opposition to the motion to amend. (ECF Nos. 73, 74, 75.)

For the reasons described below, it is recommended that the motion to amend be granted in part and denied in part, and that the motions to dismiss be granted in part and denied in part.

## I. PROPOSED FINDINGS OF FACT

### A. Background

This case arises out of the foreclosure sale of a parcel of real property located at 7421 Iris Cove, Memphis, Tennessee 38125 ("the Property"). On June 2, 2016, the Fords filed a Petition for Injunctive Relief in the Chancery Court of Shelby County, Tennessee. (See ECF No. 1-2 at 1-12.) The state court petition names Chase, Specialized, and Shapiro as defendants,

and alleges that Chase was the beneficiary of the Deed of Trust ("DOT") encumbering the Property, Specialized was the loan servicer, and Shapiro was the substitute trustee.[1] The Fords sought to enjoin a foreclosure sale of the Property scheduled for June 2, 2016, and asserted claims of breach of contract, breach of the covenant of good faith and fair dealing, and violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 *et seq*.

The Chancery Court denied the Fords' request for a temporary restraining order and set a hearing for the morning of June 4, 2016. (See ECF No. 1-2 at 12.) The foreclosure sale took place on June 2, 2016. On June 13, 2016, the defendants removed the case to the United States District Court for the Western District of Tennessee. (ECF No. 1.) On July 13, 2016, with leave of the court, the Fords filed their first Amended Complaint. (ECF No. 18.) The Amended Complaint asserts additional claims for "Fraud and Deceit," "Violation of Escrow Waiving," "Quiet Title/Set Aside," and "Declaratory Judgment," and adds Marvin's and Marathon as additional defendants. Marvin's is alleged to have purchased the Property at the June 2, 2016 foreclosure sale, and Marathon is alleged to be "the agent of [Marvin's] and is attempting to evict the Fords via a

_____

[1]The DOT is included in the state court pleadings, all of which are attached to the Notice of Removal. (See ECF No. 1-2 at 18-39.)

- 3 -

Forcible Entry and Detainer proceeding in Shelby County General Sessions Court at Docket No. 1807459." (Id. at 3.)

In their responses to the defendants' motions to dismiss, the Fords indicated their intent to seek leave to further amend their complaint.[2] The Fords filed a motion to amend on November 30, 2016, and attached a proposed second amended complaint ("Proposed Complaint"). (ECF No. 72-1.)

**B.    The Proposed Complaint**

The Fords' Proposed Complaint, which includes many of the same allegations previously set forth in their Amended Complaint, provides as follows:

> The Fords were vested with title to the Property by virtue of [a] warranty Deed executed on July 2, 1999, and recorded on July 15, 1999.   The Property is encumbered by a Deed of Trust, (hereinafter "DOT") executed on August 12, 2003 and recorded on September 2, 2003 . . .   [s]aid DOT names [Chase] as the beneficiary.   Upon information and belief, the DOT is a federally related mortgage loan as set forth in the Real Estate Settlement and Procedures Act . . . .

---

[2]On October 4, 2016, Chase and Specialized filed a separate motion to dismiss the Amended Complaint for Failure to Comply with Court Order.   (ECF No. 50.)   In this motion, Chase and Specialized seek dismissal pursuant to Federal Rule of Procedure 41(b) on the grounds that the Fords failed to timely respond to the pending motions to dismiss.   The court finds that this argument is not well-taken.   Although the Fords' responses to the motions to dismiss were untimely, they substantially complied with this court's show cause order entered on October 5, 2016.   (ECF No. 51.)   In any event, the Fords' late filings, without more, would not provide a basis for the court to dismiss the complaint with prejudice.   Therefore, it is recommended that Chase and Specialized's motion to dismiss pursuant to Rule 41(b) be denied.

An Appointment of Substitute Trustee (hereinafter "Appointment") was executed on May 15, 2015, and recorded on May 29, 2015, with the Office of the Shelby County Register of Deeds at Instrument No. 1505708. The Appointment purports to name [Shapiro] as Substitute Trustee, vesting [Shapiro] with the powers and duties of the original Trustee named in the DOT. The Appointment, however, is defective because the execution of said Appointment did not occur prior to the first notice of publication as required by Tenn. Code Ann. §§ 35-5-101. [Shapiro], therefore, was not timely appointed and was not cloaked with the requisite authority to initiate or conduct a foreclosure sale of the Property.

(Id. at 4-5.)

The Fords allege that "[i]n early 2015, a dispute developed between Chase and the Fords involving the amount and allocation of escrow payments, misapplication of payments, and the right to waive escrow services." (Id. at 5.) They assert that from early 2015 until April 2016, they made numerous inquiries, including qualified written responses within the meaning of RESPSA, to Chase regarding these issues. Chase allegedly failed to respond to the Fords' concerns. A foreclosure sale of the Property was originally scheduled for April 21, 2016, and Specialized began servicing the DOT on April 22, 2016. The Proposed Complaint further states:

[a]lthough the foreclosure sale date of April 21, 2016 was postponed to June 2, 2016, Chase, [Shapiro], and [Specialized] failed to specify and send notice of the date time and location of the rescheduled sale date of June 2, 2016 as required by Tenn. Code Ann. § 35-5-101(f). Therefore, proper notice was not given . . .

- 5 -

On or about the week before the scheduled foreclosure sale date of June 2, 2016, the Fords made several calls to [Shapiro] in an effort to cancel the foreclosure. The Fords were informed that the attorney handling the matter was Jonathan Davis. Despite leaving several messages for Mr. Davis, the Fords did not receive a return phone call from Mr. Davis.

On June 1, 2016, an employee of [Shapiro] named Kyle stated to the Fords that [Shapiro] was still waiting on a response from the mortgage company about the postponement of the foreclosure sale. In addition, when the Fords inquired about the location of the scheduled foreclosure sale, Kyle stated that it would take place at the steps of the county courthouse. However, upon information and belief, the wrongful and unlawful foreclosure sale [of] the Property purportedly occurred in the Auction.com room of the Comfort Inn Downtown, 100 N. Front Street, Memphis, Tennessee 38103.

On the morning of the purported foreclosure sale date, June 2, 2016, the Fords were informed by a female employee of [Shapiro] that the foreclosure sale would be postponed if they filed a motion for an injunction and got it to [Shapiro's] paralegal before the Sale of the Property. The Fords sent a copy of the motion for an injunction . . . via facsimile to [Shapiro] and delivered by hand a copy of said filed motion before the purported wrongful and unlawful foreclosure sale of the property to Akiliah, an employee of Auction.com. Because the Fords were not registered with Auction.com, they were not allowed to go into the Auction.com room. Upon information and belief, Akilah took a copy of the motion to a representative of [Shapiro].

Akilah stated that the scheduled foreclosure sale of the Property had not occurred and that the Property was pulled from the list of properties that were scheduled to be auctioned off that day.

Upon information and belief, [Specialized], Chase, [Shapiro] and Auction.com, without providing the required personal notice to the Fords at the time the foreclosure sale date was set for June 2, 2016,

scheduled and held a wrongful and unlawful foreclosure sale, which purportedly occurred on June 2, 2016.

The purported foreclosure sale took place in the Auction.com Room of the Comfort Inn Downtown, 100 N. Front Street, Memphis, TN 38103.

## II. PROPOSED CONCLUSIONS OF LAW

### A. Standard of Review

Federal Rule of Civil Procedure 15(a)(2) directs courts to freely give a party leave to amend its pleading when justice so requires. Fed R. Civ. P. 15(a)(2). "However, a motion to amend may be denied where there is 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" Riverview Health Inst. LLC v. Med. Mut. of Ohio, 601 F.3d 505, 520 (6th Cir. 2010) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)). "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." Rose v. Hartford Underwriters Ins. Co., 203 F.3d 417, 420 (6th Cir. 2000) (citing Thiokol Corp. v. Dep't of Treasury, State of Michigan, Revenue Div., 987 F.2d 376, 382–83 (6th Cir. 1993)). For purposes of judicial economy, the court will consider whether allowing the Fords to file the Proposed Complaint would be futile by considering all relevant arguments raised by the defendants in the motions to dismiss.

In assessing whether the Proposed Complaint states a claim upon which relief may be granted, the court applies the standards under Rule 12(b)(6) of the Federal Rules of Civil Procedure, as stated in Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009), and Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-57 (2007). Hill v. Lappin, 630 F.3d 468, 470-71 (6th Cir. 2010). Accordingly, "[a]ccepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" Williams v. Curtin, 631 F.3d 380, 383 (6th Cir. 2011) (quoting Iqbal, 556 U.S. at 681) (alteration in original). "[P]leadings that . . . are no more than conclusions[] are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Iqbal, 556 U.S. at 679; see also Twombly, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"*Pro se* complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should

therefore be liberally construed." _Williams_, 631 F.3d at 383 (internal quotation marks omitted). _Pro se_ litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. _Wells v. Brown_, 891 F.2d 591, 594 (6th Cir. 1989); _see also_ _Brown v. Matauszak_, 415 F. App'x 608, 613 (6th Cir. 2011) ("[A] court cannot create a claim which [a plaintiff] has not spelled out in his pleading") (internal quotation marks omitted); _Payne v. Sec'y of Treas._, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming _sua sponte_ dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); _cf._ _Pliler v. Ford_, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to _pro se_ litigants.").

The court finds no undue delay, bad faith, or dilatory motive on the part of the Fords in seeking to further amend their complaint. The court further finds that the defendants would not be unduly prejudiced by allowing the Fords to amend their complaint. Thus, the court's consideration of the motion to amend will focus on whether the amendment would be futile.

**B. "Breach of Contract" and Breach of Good Faith and Fair Dealing**

In the Proposed Complaint, the Fords allege that "[a]lthough the foreclosure sale date of April 21, 2016 was

postponed to June 2, 2016, Chase, [Shapiro], and [Specialized] failed to specify and send notice of the date time and location of the rescheduled sale date of June 2, 2016 as required by Tenn. Code Ann. § 35-5-101(f)," and that "[Shapiro] and [Specialized's] failure to provide the notices required by the DOT and regulated by Tenn. Code Ann. §§ 35-5-101 constitutes a breach of contract. In addition, the untimely and improper notice provided by Chase constitutes a breach of contract." (Id. at 7, 10.)

"Under Tennessee law, a foreclosure sale may be set aside where the trustee fails to comply with the notice requirements of the deed of trust." Gibson v. Mortg. Elec. Registration Sys., Inc., No. 11-2173-STA, 2012 WL 1601313, at *6 (W.D. Tenn. May 7, 2012) (citing Fed. Nat. Mortg. Ass'n v. Robilio, No. W200701758COAR3CV, 2008 WL 2502114, at *7 (Tenn. Ct. App. June 24, 2008) ("Tennessee law has required the trustee's strict compliance with the advertisement and notice terms as provided in the deed of trust.")). In Robilio, the Tennessee Court of Appeals distinguished the consequences of failure to comply with the foreclosure terms of the deed of trust with failure to comply with the statutory foreclosure requirements established in Tenn. Code Ann. §§ 35-5-101 et seq.

> The consequences of a foreclosing trustee's failure to comply with foreclosure terms depend upon the source of the requirements. Specifically, if the terms are

sufficiently clear and originate in the deed of trust, the law demands strict compliance for the conveyance to be valid. In contrast, where a foreclosing trustee proceeds according to statutory requirements, the law in Tennessee is not so exacting. The failure of a trustee to comply with statutory requirements does not render the sale at foreclosure void or even voidable.

But the parties can vary the terms of foreclosure by contract, and where a deed of trust provision varies from the statutory requirements, that term will generally supersede the statutory requirement.

Robilio, 2008 WL 2502114, at *7 (internal citations omitted); see Tenn. Code Ann. § 35-5-106 ("Should the officer, or other person making the sale, proceed to sell without pursuing the provisions of this chapter, the sale shall not, on that account, be either void or voidable."); id. § 35-5-107 ("Any officer, or other person, referenced in § 35-5-106 who fails to comply with this chapter commits a Class C misdemeanor and is, moreover, liable to the party injured by the noncompliance, for all damages resulting from the failure.").

In Gibson, the court found the plaintiffs' allegation that no defendant had mailed the plaintiffs a copy of the notice of a foreclosure sale (which had occurred on December 9, 2010, as required by paragraph 22 of the deed of trust) satisfied the Rule 12(b)(6) standard.[3] The court stated,

[t]he Deed of Trust at paragraph 22 states, "If Lender invokes the power of sale, Trustee shall give notice of sale by public advertisement in the county in which

_____

[3]The court decided this issue in the context of ruling on the plaintiffs' motion to amend their complaint.

the Property is located for the time and in the manner
provided by Applicable law, and Lender or Trustee
shall mail a copy of the notice of sale to Borrower in
the manner provided" elsewhere in the deed. Paragraph
15 of the Deed of Trust requires that "[a]ll notices
given by Borrower or Lender in connection with this
Security Instrument must be in writing" and "[a]ny
notice to Borrower in connection with this Security
Instrument shall be deemed to have been given to
Borrower when mailed by first class mail or when
actually delivered to Borrower's notice address if
sent by other means." The Court construes this
paragraph to mean that publication of the notice was
to follow the statutory publication requirements while
the mailed notice was governed by the Deed of Trust
itself.

Gibson, 2012 WL 1601313, at *6 (internal citations omitted)

(quotations and alterations in original). The court noted the

pleadings contained a letter mailed to the plaintiffs that gave

notice of a foreclosure sale scheduled for September 16, 2010,

which stated that the "Substitute Trustee reserves the right to

adjourn the day of the sale to another day, time and place

certain without publication, upon announcement at the time and

place for the sale set above." Id. The court found "no

indication in the pleadings that the substitute trustee actually

gave such notice" and "the issue at the very least raises a

question of fact, which the Court cannot resolve at the

pleadings stage." Id.

As was the case in Gibson, § 22 of the Fords' DOT provides:

[i]f Lender invokes the power of sale, Trustee shall
give notice of sale by public advertisement in the
county in which the property is located for the time
and in the manner provided by Applicable Law, and

- 12 -

Lender or Trustee shall mail a copy of the notice of sale to Borrower in the manner provided in Section 15.

(ECF No. 1-2 at 30.)  Pursuant to § 15:

[a]ll notices given by Borrower or Lender in connection with this Security Instrument must be in writing.  Any notice given to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means.

(Id. at 27.)

The Fords' allegations regarding lack of notice are less specific than the allegations in Gibson.  However, construing the *pro se* complaint liberally, the court finds the Fords have adequately alleged a violation of the notice requirements contained in the DOT, as well as the statutory requirements.[4]  Compare Gibson, 2012 WL 1601313, at *6 with Nationstar Mortg., LLC v. Humphrey, No. 11-2185-STA, 2011 WL 3273077, at *5 (W.D. Tenn. July 29, 2011) ("Plaintiff has not pled or argued that the deed of trust varies from the statutory notice requirements under Tennessee law let alone that there was a failure to observe a specific notice requirement originating in the deed of trust.").  While under certain circumstances the court may consider at the Rule 12(b)(6) stage documents that are integral

---

[4]The court notes that the allegations regarding failure to comply with the notice requirements are substantially similar in the Amended Complaint and the Proposed Complaint, and thus would satisfy the Rule 12(b)(6) standard even if the Fords were not granted leave to amend.

- 13 -

to the claims, see infra footnote 4, the court at this time cannot consider the defendants' exhibits relating to the adequacy of the notice provided to the Fords. (See ECF Nos. 32-3, 34-1, 36-1.)

The Proposed Complaint also asserts several other grounds for breach of the DOT: that the Fords were not in default, that Chase and Specialized breached § 22 of the DOT by failing to provide proper notice of acceleration, that Specialized failed to allow the Fords a reasonable time for corrective action before it began servicing the DOT, and that the foreclosure sale is invalid because the appointment of Shapiro as substitute trustee was defective.

As to the Fords' allegation that they were not in default, the Proposed Complaint references an Acceleration Warning ("Warning") dated September 29, 2015, which informed the Fords that $10,880.30 was past due under the DOT.[5] However, the Fords allege that after receiving the Warning they "disputed that they [] were in default," and that they "have paid all of the

_____

[5]Chase has attached this letter as an exhibit to its motion to dismiss the Amended Complaint. (ECF No. 32-2.). It is appropriate for the court to consider the Warning, as a document incorporated by reference in the Proposed Complaint, in applying the Rule 12(b)(6) standard. See Commercial Money Ctr., Inc. v. Illinois Union Ins. Co., 508 F.3d 327, 335–36 (6th Cir. 2007) ("[W]hen a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment.").

principal and interest owed pursuant to the terms of the DOT and Note" and "all of the escrow amounts except for the disputed amounts owed pursuant to the terms of the DOT." The court finds that the Proposed Complaint plausibly alleges a claim for breach of the DOT against Chase, Shapiro, and Specialized on the grounds that the Fords were not in default.

The Fords further allege that "[u]pon information and belief, Chase, by and through its agent [Shapiro], initiated foreclosure proceedings on the DOT around the middle of May 2015," but apart from this conclusory assertion, nothing in the Proposed Complaint suggests that any defendant invoked the acceleration clause before the date identified in the Warning.[6] The Fords contend that Specialized breached § 20 of the DOT by failing to afford them a reasonable period to take corrective action before beginning to service the loan. However, § 20 does not require a reasonable period of time for corrective action before a change in the loan servicer. As to the Fords' contention that the appointment of Shapiro as substitute trustee was defective, § 35-5-114 regulates the appointment of substitute trustees as relating to foreclosure sales. However, the Proposed Complaint neither sufficiently alleges a violation

---

[6]The Warning informed the Fords that if they "fail to cure the default on or before 11/03/2015, Chase may accelerate the maturity of the loan . . . ." (ECF No. 32-2 at 1-2.) The Fords do not allege that the contents of the Warning are inadequate under § 22.

of § 35-5-114 nor identifies how such a violation would breach the DOT.  The court finds that the Proposed Complaint fails to state any claim for a breach of the DOT based on these three grounds.

The Fords list a number of ways in which some or all of the defendants allegedly breached the covenant of good faith and fair dealing.  "In Tennessee, [p]arties to a contract owe each other a duty of good faith and fair dealing as it pertains to the performance of a contract."  Mhoon v. U.S Bank Home Mortg., No. 12-CV-03053-JPM-TMP, 2013 WL 6858680, at *5 (W.D. Tenn. Dec. 30, 2013).  However, "a breach of the implied covenant of good faith and fair dealing is not an independent basis for relief, but rather may be an element or circumstance of . . . breaches of contracts."  Ike v. Quantum Servicing Corp., No. 11-02914, 2012 WL 3727132, at *5 (W.D. Tenn. Aug. 27, 2012) (alterations in original).  "The obligation of good faith and fair dealing does not create additional contractual rights or obligations, and it cannot be used to avoid or alter the terms of an agreement."  Cadence Bank, N.A. v. The Alpha Trust, 473 S.W.3d 756, 769 (Tenn. Ct. App. 2015) (internal citations omitted).  "The purpose of the implied duty is (1) to honor the reasonable expectations of the contracting parties and (2) to protect the rights of the parties to receive the benefits of the agreement

into which they entered." <u>Id.</u> (internal citations and quotation marks omitted).

The court has carefully reviewed the Proposed Complaint and finds no basis for the proposed claim of breach of the covenant of good faith and fair dealing. Accordingly, the court recommends the motion to amend be granted insofar as the Proposed Complaint alleges that Chase, Shapiro, and Specialized failed to comply with the notice requirements and breached the DOT by foreclosing when the Fords were not in default. The court further recommends the motion to amend be denied and the motions to dismiss be granted as to all other claims of breach of the DOT and breach of the covenant of good faith and fair dealing.

**C. Fraud**

The Proposed Complaint also asserts a claim of fraud against Chase, Shapiro, Specialized, and Auction. The elements of a fraud claim in Tennessee are:

> (1) an intentional misrepresentation with regard to a material fact; (2) knowledge of the representation falsity—that the representation was made knowingly or without belief in its truth, or recklessly without regard to its truth or falsity; (3) that the plaintiff reasonably relied on the misrepresentation and suffered damage; and (4) that the misrepresentation relates to an existing or past fact, or if the claim is based on promissory fraud, then the misrepresentation must embody a promise of future action without the present intention to carry out the promise.

<u>Stacks v. Saunders</u>, 812 S.W.2d 587, 592 (Tenn. Ct. App. 1990).[7]
"To make a showing of promissory fraud within this framework, a
plaintiff must demonstrate that 'a promise or representation was
made with the intent not to perform.'" <u>Shah v. Racetrac
Petroleum Co.</u>, 338 F.3d 557, 567 (6th Cir. 2003) (quoting <u>Fowler
v. Happy Goodman Family</u>, 575 S.W.2d 496, 499 (Tenn. 1978)).

Federal Rule of Procedure 9(b) requires a party alleging
fraud to "state with particularity the circumstances
constituting fraud or mistake." Fed. R. Civ. P. 9(b). The
Sixth Circuit has explained that "to satisfy Rule 9(b), a
plaintiff must (1) specify the time, place, and content of the
alleged misrepresentation, (2) identify the fraudulent scheme
and the fraudulent intent of the defendant, and (3) describe the
injury resulting from the fraud." <u>Thompson v. Bank of Am.,
N.A.</u>, 773 F.3d 741, 751 (6th Cir. 2014) (citing <u>U.S. ex rel.
SNAPP, Inc. v. Ford Motor Co.</u>, 532 F.3d 496, 504 (6th Cir.
2008)). The purposes of the heightened pleading requirement of
Rule 9(b) "are (1) to alert defendants to the particulars of the
allegations against them so they can intelligently respond; (2)
to prevent 'fishing expeditions'; (3) to protect defendants'
reputations against fraud allegations; and (4) to whittle down

---

[7]In Tennessee, "intentional misrepresentation," "fraudulent
misrepresentation," and "fraud" are different names for the same
cause of action. <u>See Hodge v. Craig</u>, 382 S.W.3d 325, 342 (Tenn.
2012).

potentially wide-ranging discovery to only relevant matters."

Id. (citing Chesbrough v. VPA, P.C., 655 F.3d 461, 466–67 (6th
Cir. 2011)).

The Fords base their fraud claim on several alleged
statements, which they claim are false and constitute
intentional misrepresentations:

> Chase, [Specialized] and [Shapiro's] representations
> on April 18, 2016 to the Fords that they would look
> into and address the Ford's i) escrow account and its
> allocation and ii) misapplication of funds . . . .
>
> [Shapiro's] representation to the Fords that they
> would postpone the wrongful and unlawful foreclosure
> sale once a motion was filed and Auction.com's
> representation to the Fords that they had pulled the
> Property from the stack to be auctioned on June 2,
> 2016 . . . .
>
> [Shapiro's] representation that Attorney Jonathan
> Davis would return the Fords' calls a week before the
> purported foreclosure sale date . . . .
>
> On June 1, 2016, an employee of [Shapiro] named Kyle
> misrepresented to the Fords that [Shapiro] was still
> waiting on a response from a mortgage company about
> the postponement of the foreclosure sale. [Shapiro]
> did not respond to the Fords regarding the
> postponement . . . .

(ECF No. 72-1 at 13–14.) According to the Proposed Complaint,
the Fords "reasonably relied upon said false representations to
their detriment by foregoing: filing an injunction five days
before the purported foreclosure sale date; seeking to reinstate
the loan; and seeking to register for the foreclosure sale."
(Id. at 14.)

The Proposed Complaint fails to plead any fraud claims that would survive a Rule 12(b)(6) motion to dismiss. The April 18 allegations as to Chase, Shapiro, and Specialized fall well short of specifying the content of and injury resulting from the alleged misrepresentations as required by Rule 9(b). As to the allegations that Shapiro's attorney Jonathan Davis would call the Fords back, the Proposed Complaint does not identify who at Shapiro allegedly made this representation to the Fords, or what, if any, action Davis would take with respect to the Fords. Moreover, it was not reasonable for the Fords' to rely on a representation that some unidentified person "would look into" the Fords' concerns, or an attorney from Shapiro would call them back.

The Proposed Complaint is more specific about the content of the misrepresentations allegedly made by Shapiro and Auction on June 1 and 2, 2016. However, even if these allegations would satisfy Rule 9(b) as to content, they fail to adequately plead reliance and damages. First, the Fords could not have forgone "filing an injunction five days before the purported foreclosure sale date" in reliance on alleged misrepresentations made less than five days before the June 2 sale date.[8] Moreover, although

---

[8]Under Tennessee law,

> [n]o judge or chancellor shall grant an injunction to
> stay the sale of real estate conveyed by deed of trust

the Fords allege they also relied on Shapiro and Auction's purported misrepresentations by not seeking to reinstate the loan or register for the foreclosure sale, the Proposed Complaint does not plausibly allege damages resulting from this alleged reliance.

Because the Proposed Complaint fails to state a claim for fraud against any defendant, the court recommends the motion to amend be denied as to the fraud claims, and the motions to dismiss be granted.

**D.    RESPA**

In enacting RESPA, Congress intended to ensure "that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country."  <u>Marais v. Chase Home Fin. LLC</u>, 736 F.3d 711, 719 (6th Cir. 2013) (quoting <u>Vega v. First Fed. Sav. & Loan Ass'n of Detroit</u>, 622 F.2d 918, 923 (6th Cir. 1980)); <u>see also</u> 12 U.S.C. § 2601(a).  "Although the

---

or mortgage, with a power of sale, executed to secure the payment of a loan of money, unless the complainant gives five (5) days' notice to the trustee or mortgagee of the time when, place where, and of the judge or chancellor before whom, the application for injunction is to be made.

Tenn. Code Ann. § 29-23-201(a).

'settlement process' targeted by the statute was originally limited to the negotiation and execution of mortgage contracts, the scope of the statute's provisions was expanded in 1990 to encompass loan servicing." Marais, 736 F.3d at 719 (quoting Medrano v. Flagstar Bank, FSB, 704 F.3d 661, 665-66 (9th Cir. 2012) (internal citations omitted)). "As a remedial statute, RESPA is construed broadly to effectuate its purposes." Id. (citing Carter v. Welles-Bowen Realty, Inc., 553 F.3d 979, 985-86 n.5 (6th Cir. 2009)).

Pursuant to § 2605(e):

> [i]f any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 5 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.

§ 2605(e)(1)(A). Section 2605(e) defines a qualified written request ("QWR") as

> a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that—
>
>> (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
>>
>> (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

§ 2605(e)(1)(B)(i)-(ii).  Section 2605(e)(2) requires a servicer
to respond to a QWR within thirty days "by conducting an
investigation and providing the borrower with a written
explanation or clarification as to why the servicer believes the
account of the borrower is correct or the information sought is
unavailable or cannot be obtained, or if the account is
incorrect, by making appropriate corrections in the account of
the borrower." Griffin v. Bank of Am., No. 14-CV-2335-JTF-TMP,
2015 WL 12532144, at *3 (W.D. Tenn. June 11, 2015), report and
recommendation adopted Griffin v. Bank of Am., No. 2:14-CV-
02335-JTF, 2015 WL 3892058 (W.D. Tenn. June 24, 2015).  "If a
loan servicer fails to follow the provisions for responding to
borrower inquiries, RESPA allows borrowers to recover actual
damages as well as statutory damages up to $2,000 if the damages
are based on a pattern or practice of noncompliance." Martini
v. JPMorgan Chase Bank, N.A., 634 F. App'x 159, 163-64 (6th Cir.
2015) (citing § 2605(f)(1)).

    To plead a claim under § 2605 of RESPA, the Fords must
sufficiently allege that their loan is a federally related
mortgage loan and that they sent a QWR to a loan servicer.[9] See
Hancox v. CitiMortgage, Citifinancial, Cmty. Mortg., No. 13-CV-
02629-STA/TMP, 2013 WL 12049111, at *2 (W.D. Tenn. Nov. 19,

---

[9]"The term 'servicer' means the person responsible for servicing
of a loan (including the person who makes or holds a loan if
such person also services the loan)." § 2605(i)(2).

2013), report and recommendation adopted, No. 13-2629-STA-TMP, 2013 WL 12049112 (W.D. Tenn. Dec. 20, 2013) ("First, the complaints do not sufficiently allege which, if any, of the Defendants are loan servicers . . . [s]econd, the complaints do not sufficiently allege that the loan at issue is a federally related mortgage loan under RESPA."); Gibson v. Mortg. Elec. Registration Sys., Inc., No. 11-2173-STA, 2011 WL 3608538, at *4 (W.D. Tenn. Aug. 16, 2011) ("Failure to plead that a defendant is in fact a loan servicer will defeat the plaintiff's cause of action under RESPA.").

"For a borrower inquiry to trigger RESPA's procedural requirements, it must meet the definition of a [QWR]." Martini, 634 F. App'x at 163. "[A] Plaintiff cannot maintain an action under RESPA by merely alleging that they sent a QWR." Brown v. Fed. Nat. Mortg. Ass'n, No. 2:13-CV-02107-JTF, 2013 WL 4500569, at *5 (W.D. Tenn. Aug. 19, 2013). Rather, a plaintiff must "plead that the writing he sent regarded servicing of his loan, which is necessary for it to have constituted a QWR." Moore v. U.S. Bank, N.A., No. 1:12-CV-1087, 2013 WL 1500594, at *3 (W.D. Mich. Apr. 10, 2013).

The Proposed Complaint alleges that

[f]rom early 2015 until April 2016, the Fords have made repeated inquiries with Chase regarding (a) the status and application of their escrow account; (b) the misapplication of funds from payments made by the Fords; (c) requests to waive escrow services; (d)

requests to waive escrow services; (d) removal of
negative credit items from credit reports because of
the outstanding Qualified Written Requests
(hereinafter 'QWRs') and mistakes; and (e) removal of
the account from foreclosure. In addition, the Fords
sent written correspondence (QWRs) to Chase and
[Shapiro] dated May 23, 2015, December 10, 2015,
January 26, 2016, and May 31, 2016. Despite Chase's
assurances that the Fords' inquiries would be
adequately addressed, the Fords did not receive a
substantive response or explanation to their QWRs.
Said inquiries by the Fords constitute Notices of
Error (hereinafter "NOEs") and/or QWRs as set forth in
RESPA. Chase did not respond to said NOEs and QWRs in
the time frames and manners prescribed by RESPA.

(ECF No. 72-1 at 5-6). The Fords also assert that

[they] made repeated inquiries with Chase,
[Specialized] and [Shapiro] concerning the allocation
and application of their escrow account and
misapplication of funds. Said Inquiries constitute
NOEs and QWRs as set forth in RESPA. Chase and
[Specialized] failed to send a notice of receipt
within five days for each QWR sent to them. In
addition, Chase and [Specialized] failed to act with
respect to the QWRs within thirty days.

Chase and [Specialized] failed to make appropriate
corrections in the Fords' account, including the
crediting of any late changes or penalties as required
by 12 U.S.C. § 2605(e)(2)(A).

(Id. at 15.) The Proposed Complaint also asserts that Chase and

Specialized failed to provide the written explanations or

clarifications required by § 2605(e)(2)(B) & (C), and failed to

"protect the Fords' credit rating as required by § 2605(e)(3)."

(Id. at 16.)

As an initial matter, the court finds the Proposed

Complaint does not sufficiently plead that Shapiro is a loan

servicer. The Proposed Complaint states a claim under § 2605 of RESPA against Chase and Specialized that meets the Rule 12(b)(6) standard. The Proposed Complaint alleges that the Fords' loan is a federally related mortgage loan covered by § 2605(e)(1)(A), and reasonably can be construed to allege that Chase and Specialized are loan servicers within the meaning of § 2605(i)(2). Moreover, the Proposed Complaint contains sufficient factual assertions to support the Fords' allegations that they sent QWRs to Chase and Specialized.

Chase and Specialized argue that the Proposed Complaint fails to adequately plead the existence of actual damages, as required by § 2605(f)(1). The Fords assert that they "have been damaged by Chase and [Specialized's] violation of RESPA and are entitled to actual damages, statutory damages, costs and attorney's fees." (ECF No. 72-1 at 16.) The Sixth Circuit has indicated that a complaint asserting a claim under § 2605 and alleging "damages in an amount not yet ascertained, to be proven at trial" satisfied the Rule 12(b)(6) standard. Mellentine v. Ameriquest Mortg. Co., 515 F. App'x 419, 425 (6th Cir. 2013); but see Martini, 634 F. App'x at 164 (finding that the plaintiffs failed to adequately plead damages because they alleged "damages that are due to their inability to pay their mortgage, not the alleged RESPA violation."). The court finds

that the Proposed Complaint sufficiently alleges actual damages pursuant to § 2605(f)(1).

The Proposed Complaint does not contain sufficient allegations to establish a plausible claim that Chase or Specialized engaged in "a pattern or practice of noncompliance with the requirements of this section." See § 2605(f)(1)(B). Accordingly, the Fords have not stated a claim for statutory damages. Similarly, although the Fords ask for punitive damages, punitive damages "are not identified under RESPA." Houston v. U.S. Bank Home Mortg. Wisconsin Servicing, 505 F. App'x 543, 546 n.3 (6th Cir. 2012).

The court recommends the motion to amend be granted as to the RESPA claim against Chase and Specialized, and denied as to all other defendants. The court further recommends the motions to dismiss be denied as to the RESPA claims against Chase and Specialized and granted as to all other defendants.

**E.    Tenn. Code Ann. § 35-5-112(b)**

For the first time in the Proposed Complaint, the Fords assert that "[by] using an auctioneer (Auction.com) to conduct the purported foreclosure sale at the Auction.com Room of the Downtown Comfort Inn," Chase, Specialized, Shapiro, and Auction violated Tenn. Code. Ann. § 35-5-112. That statute provides:

> (a) Whenever real or personal property is to be sold at public sale under any order or decree of any court in this state, the court, judge or chancellor under

whose jurisdiction the sale is to be made has the discretionary authority to secure the services of an auctioneer licensed in this state to conduct the public sale and to fix the auctioneer's fee, the fee to be not more than eight percent (8%) of the sale price on sales of real property and not more than ten percent (10%) of the sale price on sales of personal property, these fees not to include the expenses of sales, and to order the fee to be paid out of the proceeds of the sale.

(b) Whenever real property is sold at a public sale conducted by an auctioneer, the sale shall be conducted on the real property to be sold. This subsection (b) shall not be applicable to sales of parcels pursuant to title 67, chapter 5.

Tenn. Code Ann. § 35-5-112.

The court does not read § 35-5-112(b) to apply to the sale of the Property in this case. Instead, the court reads "public sale conducted by an auctioneer" as used in subsection (b) to refer to the type of sale defined in subsection (a), that is, a "public sale under any order or decree of any court in this state." It is clear from the Proposed Complaint that the sale of the Property in this case was not conducted "under any order or decree of any court." Accordingly, the Fords have failed to state a claim under § 35-5-112(b), and the court recommends the motion to amend be denied as to this claim.

**F.    "Escrow Waiving"**

The Proposed Complaint further alleges that "[p]ursuant to 15 U.S.C. § 1639, *et seq.*, the Fords are not required to maintain an escrow account. After the Fords provided written

notices to Chase seeking to close the escrow account, Chase violated 15 U.S.C. § 1639, *et seq.* by not allowing the Fords to do so." (ECF No. 72-1 at 17-18.) The conclusory references to "escrow waiving" and § 1639 are insufficient to state a claim. The Proposed Complaint does not identify or cite any statutory provisions that establish the Fords are not required to maintain an escrow account, or which provisions required Chase to close the Fords' escrow account upon request.[10] Accordingly, it is recommended that the motion to amend be denied as to the "escrow waiving" claim, and the motions to dismiss be granted.

## G. Quiet Title, Set Aside, and Declaratory Judgment

The Fords seek to set aside the foreclosure sale of the Property and be adjudged "the only true and lawful owners of the Property." (ECF No. 72-1 at 21.). As noted above, the Proposed Complaint plausibly states a claim that the foreclosure sale is invalid due to a breach of the notice requirements of the DOT and because the Fords were not in default. In their motions to

---

[10]In several of their responses to the motions to dismiss, the Fords state that they "primarily rely upon 15 U.S.C. § 1639d(h), 1639d(j)." (ECF No. 52 at 12; ECF No. 56 at 10.) As the defendants correctly note, the Fords may not assert additional facts or causes of action in their responses to the motions to dismiss. Moreover, although the Fords had the opportunity to submit the Proposed Complaint for the court's consideration, the Fords did not augment their "escrow waiving" claims in the Proposed Complaint. However, even if the court were to consider the statutes that the Fords identify in their responses, the escrow waiving claim still would not state a claim upon which relief could be granted.

dismiss, Marvin's and Marathon note that their only involvement in this matter is that Marvin's purchased the Property at the foreclosure sale and Marathon serves as Marvin's "property manager or agent." They note that the Fords have not asserted any claims against Defendants Marathon and Marvin's specifically, the only claims that apply to Marathon and Marvin's are the claims for Quiet Title/Set Aside and Declaratory Judgment. Because the Fords have sufficiently pleaded claims for breach of the DOT which, if proven, could cause the foreclosure sale to be set aside, it is recommended the motions to dismiss against Marvin's and Marathon be denied.

As to the Fords' prayer for quiet title, "[a] party wishing to obtain quiet title must plead that she has superior title against any other claimants." <u>Thompson</u>, 773 F.3d at 750 (citing <u>Hoyal v. Bryson</u>, 53 Tenn. 139, 141 (1871)). "Tennessee is a 'title theory' state. When a borrower obtains a mortgage loan to buy the house, the lender, the holder of the note, has title to the property. The borrower must satisfy her mortgage debt in order to obtain title." <u>Id.</u> (citing <u>Dauenhauer v. Bank of N.Y. Mellon</u>, 562 F. App'x 473, 481 (6th Cir. 2014)). The Fords have not alleged that they have fully satisfied the loan under the DOT, and therefore cannot state a claim for quiet title to the Property.

### III.  RECOMMENDATION

In conclusion, the court finds that the Proposed Complaint states the following claims which satisfy the Rule 12(b)(6) standard: that Chase, Specialized, and Shapiro failed to comply with the notice provisions of the DOT and Tennessee law; that Chase, Shapiro, and Specialized breached the DOT because the Fords were not in default; and that Chase and Specialized failed to comply with § 2605 of RESPA.  Accordingly, it is recommended that the Fords be granted leave to amend their complaint as to these specific claims, and the motions to dismiss be denied as to these specific claims.  It is further recommended that the motion to amend be denied, and that the motions to dismiss be granted, as to all other claims.

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

January 24, 2017
Date

### NOTICE

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS.  ANY PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY.  28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(2); L.R. 72.1(g)(2).  FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**